**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**JOHN MONROE,**

   **Plaintiff,**

           **Civil Action 2:15-cv-3052**
           **Chief Magistrate Judge Elizabeth P. Deavers**

 **v.**

**COMMISSIONER OF SOCIAL SECURITY,**

   **Defendant.**

**OPINION AND ORDER**

   Plaintiff, John Monroe, brings this action under 42 U.S.C. § 405(g) for review of a final

decision of the Commissioner of Social Security ("Commissioner") denying his application for

social security disability insurance benefits. This matter is before the Court for disposition

based upon the parties' full consent (ECF No. 6), and for consideration of Plaintiff's Statement

of Errors (ECF No. 14), the Commissioner's Memorandum in Opposition (ECF No. 21), and the

administrative record (ECF Nos. 10 and 11). For the reasons that follow, the Court

**OVERRULES** Plaintiff's Statement of Errors and **AFFIRMS** the Commissioner's decision.

## I. BACKGROUND

   Plaintiff maintains that he became disabled on October 30, 2007,[1] as a result of a back

injury and depression. (R. at 149.) In February 2009, Plaintiff filed applications for both

supplemental security income and disability insurance benefits.[2] (R. at 121-29.) Plaintiff's

---

   [1]Plaintiff was granted benefits for the time period of October 19, 2001 through October
1, 2003 stemming from an industrial injury to his back. He returned to work on October 1, 2003.
(R. at 51-59.)

   [2]Plaintiff's application for supplemental security income was disapproved due to
Plaintiff's household income. (R. 62-69.)

disability insurance benefits application was denied initially and upon reconsideration.  Plaintiff sought a *de novo* hearing before an administrative law judge.  (R. at 77-78.)

Plaintiff appeared and testified at the March 21, 2011 hearing, represented by counsel. (R. at 25-50.)  On April 4, 2011, Administrative Law Judge Kim McClain-Leazure issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (R. at 9-19.)  On April 26, 2011, Plaintiff filed a Request for Review of Hearing Decision Order. (R. at 5.)

Following the Appeals Council denial of Plaintiff's request for review, he filed an action in United States District Court, *Monroe v. Commissioner of Social Security*, Case Number 2:12-cv-837.  This Court remanded Plaintiff's claim for a new hearing and decision.  (R. at 935-45.)

The Appeals Council subsequently vacated and remanded Administrative Law Judge McClain-Leazure's decision.  (R. at 865-67.)  On April 11, 2014, Administrative Law Judge John Robert Montgomery ("ALJ") held a supplemental hearing at which Plaintiff, represented by counsel, appeared and testified.  (R. at 873-83, 895-98.)  A medical expert and a vocational expert also appeared and testified at the hearing.  (R. at 884-95, 898-905.)  On May 9, 2014, the ALJ found that Plaintiff was not disabled.  (R. at 843-57.)  On October 16, 2015, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision.  (R. at 837-42.)  Plaintiff then timely commenced the instant action.

## II.    HEARING TESTIMONY

### A.    Plaintiff's Testimony

At the March 21, 2011 administrative hearing, Plaintiff testified that his greatest problem is back pain.  (R. at 33.)  He indicated that his pain is alleviated, but not eliminated, with medication.  (R. at 33-34.)  Plaintiff also testified that he can vacuum and wash dishes on occasion, but that he lies on the couch three or four days a week because of pain.  (R. at 34.)  Plaintiff stated that he has tried to go back to work, but that he "just can't do it."  (R. at 38.)

At the April 11, 2014 administrative hearing, Plaintiff testified that he lived with his wife and drove approximately twice a week to the gas station or other places.  (R. at 874.)  He stated that he stopped working at his last job where he did electrical work on emergency vehicles because of the different positions he needed to be in to perform the work such as standing on top of the vehicle, working under hood, and climbing in the door.  (R. at 878.)  Plaintiff testified that standing or sitting in one place too long irritates his back.  (R. at 879.)  He stated the best position for him to be in is to recline or lie down.  (R. at 880.)  Plaintiff said he thought his condition had worsened since he quit working and that he could no longer do one certain thing for more than a couple of hours.  (*Id*.)  He testified that he could not lift his arms above his shoulders.  (R. at 881.)  Plaintiff further testified that pain, worry, and physical activities increase his blood pressure, but that it is the best it has ever been and that his physicians have "mainly got it under control."  (R. at 881-82.)

Plaintiff also testified that his reason for not bathing and not changing clothes on these days was due to both his mental health issues and his pain.  (R. at 897.)

**B.     Medical Expert Testimony**

Ronald Kendrick, M.D., a board certified orthopedic surgeon, testified as the medical expert at the April 11, 2014 hearing.  (R. at 884-95.)  Dr. Kendrick testified that Plaintiff's impairments, when considered either singly or in combination, do not meet or equal a listed impairment.  (R. at 887.)  Dr. Kendrick explained that the record did not document a compromised nerve or motor sensory deficits that would be consistent with the requirements of Listing 1.04.  (*Id.*)

Dr. Kendrick opined that as of December 2009, Plaintiff's lifting and carrying restrictions would place him somewhere between the light and sedentary profile of lifting 15 pounds occasionally and 10 pounds frequently, standing or walking for four out of eight hours, and sitting for six out of eight hours.  (R. at 890.)  Dr. Kendrick opined that Plaintiff was limited to occasionally stooping, kneeling, crouching, crawling, and climbing stairs.  Dr. Kendrick further opined that Plaintiff should be precluded from working around hazards, with ladders, in high places, or around dangerous moving machinery.  (R. at 891.)

Dr. Kendrick testified that based on his review of the record, Plaintiff's allegation that he could not reach overhead was not a documented impairment.  (R. at 890.)  He opined that Plaintiff had no limitations on the use of his upper extremities.  Dr. Kendrick noted that Plaintiff was on hypertension medication, but he declined to opine any additional limitations, even in light of the more recent record evidence.  (R. at 891-92, 894.)  When asked about the December 2009 report from the physical therapist Tracy Hiltz, Dr. Kendrick opined that Ms. Hiltz's findings are not revealing about the severity of Plaintiff's back condition, but rather reflect that he was in pain.  (R. at 892.)  He further opined that the hip strength findings were not reasonable

4

based upon Plaintiff's back condition and explained that such a finding "would almost be incompatible with walking." (*Id.*)

Upon questioning from Plaintiff's attorney, Dr. Kendrick testified that Dr. Massau's findings that Plaintiff's dorsal and plantar flexion of his right foot are diminished and that his motor strength of his anterior groups of the right leg are severely diminished are incompatible with the EMG testing results and the side of Plaintiff's disc protrusion. (R. at 893.) He also testified that the residual functional capacity assessment he offered included an evaluation of Plaintiff's pain. (R. at 894.)

Dr. Kendrick opined that the record evidence submitted after December 2009 does not support any further reduction in his residual functional capacity. (R. at 894.)

## C.   Vocational Expert Testimony

George W. Coleman III, M.R.C., testified as the vocational expert ("VE") at the April 11, 2014 hearing. (R. at 898-905.) The VE testified that Plaintiff's past relevant work included a body wirer, light exertion, semi-skilled level position; apartment maintenance man, a medium, unskilled position; two different driving positions, both at the medium exertion, semiskilled level; a garage door installer, heavy exertion, skilled position; a pipe fitter, heavy exertion, semiskilled positions; two trash collector entries at the medium, unskilled level; and a road technician, medium exertion, semiskilled position. (R. at 898-900.)

The ALJ proposed a series of hypothetical questions regarding an individual with Plaintiff's age, education, work experience, and the residual functional capacity ("RFC") the ALJ ultimately assessed. (R. at 900-01.) The VE testified that such an individual could perform over 240,000 sedentary jobs in the national economy, including such representative jobs as a

telephone information clerk, cutter/paster, or address clerk.  (R. at 901-02.)  The VE testified that

his testimony does not conflict with the Dictionary of Occupational Titles.  (R. at 904.)

When examined by Plaintiff's counsel, the VE testified that if a person was off task 15%

of the time, he could not perform the above jobs.  (R. at 904.)

### III.    MEDICAL RECORDS

**A.    Tracy L. Hiltz, P.T.**

On December 1, 2009, physical therapist Tracy Hiltz completed a Physical Work

Performance Evaluation.  (R. at 683-93.)  During the evaluation, Plaintiff complained of pain in

his low back and his right lower extremity.  (R. at 684.)  Ms. Hiltz observed the following

behaviors: moderate antalgic gait, moderate lateral trunk lean during sitting/standing, moderate

weight shift left during standing, rubbing low back, and frequent position changes.  (*Id.*)  She

opined that Plaintiff's pain behaviors correlated with his self-reported pain.  (*Id.*)  Ms. Hiltz also

reported that during the two hours of testing, there were two-to-three minutes pauses between

tasks while equipment was being set up.  She also noted two additional rest breaks requested by

Plaintiff, which added up to an additional seven minutes of break.  Ms. Hiltz indicated that she

observed physiological signs of fatigue.  (R. at 685.)

Testing revealed that Plaintiff could lift from floor to waist seven pounds occasionally

and from waist to eye level five pounds occasionally.  (R. at 687.)  Plaintiff's performance

further  suggested that he was able to occasionally sit, stand, climb stairs, and walk; but he could

never work bent over standing/stooping, kneeling, repetitive squatting, repetitive trunk rotation

sitting and trunk rotation standing.  (*Id.*)  Ms. Hiltz noted decreased range of motion in his low

back, pain in his low back and right lower extremity, and generalized fatigue would undermine

Plaintiff's performance.  (R. at 688.)

Ms. Hiltz concluded that Plaintiff was limited to sedentary work.  With regard to his

tolerance for an eight-hour work day, Ms. Hiltz stated as follows:

> Based upon the results of the assessment, it is difficult to determine [Plaintiff's] ability to tolerate an 8-hour day due to elevation in blood pressure from the beginning to the end of the assessment.  [Plaintiff] originally presented for FCE testing on 11-18-09, but the assessment was unable to be performed due to blood pressure of 170/98.  On today's date he presented with blood presure of 130/84.  [Plaintiff] reported a steady increase in pain as the assessment progressed.  After 2:05 hours of testing he presented with signs of elevated blood pressure including redness of face.  Blood pressure reading was 160/98 and the test was terminated.

(R. at 683.)

## B.    Sudhir Dubey, Psy.D.

Plaintiff was evaluated for disability purposes by Dr. Dubey on March 16, 2009.  (R. at

523-28.)  Plaintiff drove himself to the evaluation.  Dr. Dubey reported that Plaintiff exhibited

normal eye contact and appropriate hygiene and grooming and was on time, relaxed,

cooperative, coherent, and 100% intelligible.  (R. at 525.)  Plaintiff was able to carry out simple,

complex, and multi-step requests.  Plaintiff's thought processes were found to be within normal

limits.  Plaintiff reported no issues dealing with others, public agencies, or neighbors.  As far as

his daily activities, he also reported that with pacing, he did chores, including cleaning the house,

but required assistance with heavier and complex chores.  Plaintiff reported bathing only two out

of seven days due to no motivation.  (R. at 526.)  Plaintiff was able to drive, could manage

money independently, and interacted socially with family.  Dr. Dubey diagnosed a pain disorder

with general medical and psychological factors.  (R. at 527.)

Dr. Dubey concluded that Plaintiff's mental ability to understand, remember, and

follow instructions was mildly impaired; that his mental ability to maintain attention, concentration, persistence and pace to perform simple, repetitive tasks was mildly impaired; that his mental ability to relate to others, including follow workers and supervisors, was mildly impaired; and that his mental ability to withstand stress and pressure associated with day-to-day work activity was moderately impaired given his depressive symptoms and performance on the mental status examination. (R. at 527-28.)

## C.    Bruce Massau, D.O.

The first treatment record from pain management specialist Dr. Massau is dated May 3, 2004, as part of Plaintiff's Bureau of Worker's Compensation claim. Dr. Massau reported that Plaintiff had pain in the lumbosacral area with minimal radiation into the right leg. At that time, Plaintiff was working full-time as a carpenter. (R. at 392.) On July 19, 2004, Dr. Massau noted that Plaintiff had stopped drinking and smoking and that he had "improved markedly" and was working with his own lawn service company. (R. at 393.)

In March 2008, Plaintiff complained of continued pain in the LS spine radiating down the back and legs. He was areflexic (below normal or absent reflexes) in the patella and Achilles. Plaintiff also exhibited diminished motor tone and a mild degree of calf atrophy on the right. Plaintiff was started on Cymbalta. Dr. Massau requested an MRI. (R. at 574.)

An April 2008 MRI of Plaintiff's lumbar spine showed L5-S1 shallow left inferior foraminal spondylotic protrusion and slight left foraminal narrowing, L4-5 moderate left facet arthropathy, L3-4 slight posterior spondylotic protrusion mildly eccentric left, and L1-2 shallow posterior mixed spondylotic protrusion. (R. at 483.)

In June 2008, Plaintiff underwent an EMG, which revealed a sensory neuropathy.  (R. at 485-86.)  On December 5, 2008, Plaintiff walked with an antalgic gait and had a positive seated straight leg raise on the left.  (R. at 509.)  On January 6, 2009, Plaintiff displayed a "somewhat guarded" posture and an antalgic gait.  He reported pain in his lumbosacral spine, but also reported that the medications "do well" for him.  (R. at 506.)  Plaintiff's seated straight leg raise test was positive on the right, and he was tender to palpation at the midline of his lumbosacral spine.  (*Id.*)

On March 3, 2009, Dr. Massau noted that Plaintiff had pain in his posterior aspect of his right leg and continued pain in his lumbosacral spine radiating down his back and legs.  Plaintiff reported doing "well with his medications" and that he was "still looking for a job."  (R. at 499.)

An April 2009 CT lumbar myelogram revealed a small left paracentral disc protrusion at L5-S1 measuring 2mm, mild left neural foraminal stenosis at L5-S1, and shallow annular disc bulge at L1-L2.  (R. at 549.)  Dr. Massau described this myelogram as "interesting," noting its findings and stating that Plaintiff "continues to have an excess amount of back pain."  (R. at 559.)  He added that most of Plaintiff's pain is in his right leg and described the pain as excessive.  He also noted that Plaintiff continued to smoke.

On June 29, 2009, when Dr. Massau suggested that Plaintiff look for a job out of state, Plaintiff responded that he felt he would be abandoning his family.  (R. at 626.)  On July 28, 2009, Dr. Massau opined that Plaintiff's back does not require surgical repair.  He noted that a stimulator would be helpful but that Plaintiff was not interested in trying it.  (R. at 623.)  Plaintiff told Dr. Massau that "it is impossible to find jobs anywhere here."  (*Id.*)  Plaintiff again reported on August 28, 2009, that it was impossible to find work.  (R. at 620.) At that appointment, Dr.

Massau noted, "We have tried to do everything for [Plaintiff], the only thing I cannot do is get him a job." (*Id.*)

Plaintiff was terminated from Dr. Massau's practice on December 14, 2010 for "exhibit[ing] aggressive behavior" after a pharmacist refused to refill Plaintiff's prescription for pain medication because he exhibited signs of misuse. (R. at 715-16.)

**D.     James Soldano, M.D.**

In March 2009, Dr. Soldano completed a form indicating that he had treated Plaintiff since January 2007 and that he suffered from chronic low back pain and depression. Dr. Soldano reported that Plaintiff's condition was stable on medication and that he had no problem engaging in physical activities or in his ability to take care of her personal needs and to function independently. (R. at 487-90.) In August 2009, Dr. Soldano reported that Plaintiff's biggest issue was back pain, but that he was stable and compliant with medication. (R. at 610-12.)

**E.     State-Agency Evaluation**

On November 2, 2009, state-agency physician, Diane Manos, M.D., reviewed the record and opined that Plaintiff could lift and/or carry twenty pounds occasionally and ten pounds frequently, stand and/or walk about two hours in a workday, and sit for about six hours in a workday. (R. at 676.) She further opined that Plaintiff is limited to occasionally climbing ramps and stairs, balancing, stooping, kneeling, crouching, or crawling, but could never climb ladders, ropes, or scaffolds. (R. at 677.) Dr. Manos recommended that Plaintiff avoid moderate exposure to fumes, odors, dusts and gasses, explaining that even though he is not alleging respiratory issues, he showed mild obstruction on a March 2009 pulmonary function test that normalized with an inhaler. She further noted that Plaintiff continues to smoke 2 packs of cigarettes per day

10

and that he did have wheezing on his most recent examination.  Dr. Manos limited Plaintiff to no

unprotected heights or heavy moving machinery.  (R. at 679.)  Dr. Manos found Plaintiff's

allegations only partially credible.  Describing Plaintiff's allegations and record evidence, Dr.

Manos concluded that his allegations "appear disproportional in severity to the objective medical

findings."  (R. at 680.)

## IV.    THE ADMINISTRATIVE DECISION

On May 9, 2014, the ALJ issued his decision.  (R. at 843-57.)  The ALJ found that

Plaintiff met the insured status requirements of the Social Security Act through December 31,

2009.  (R. at 845.)  At step one of the sequential evaluation process,[3] the ALJ found that Plaintiff

had not engaged in substantially gainful activity his October 30, 2007 alleged onset date through

his December 31, 2009 date last insured.  (R. at 846.)  At step two, the ALJ found that through

his date last insured, Plaintiff had the severe impairments of lumbar spondylosis, neuropathy,

---

[3]Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence.  *See* 20 C.F.R. § 416.920(a)(4).  Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1.    Is the claimant engaged in substantial gainful activity?
2.    Does the claimant suffer from one or more severe impairments?
3.    Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4.    Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5.    Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 416.920(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

osteoarthritis of his right knee, hypertension, and pain disorder.  (*Id.*)  The ALJ determined that

Plaintiff's gunshot wound residuals and urinary incontinence were not severe impairments

because they did not impact his ability to perform basic work related activities.  (R. at 846-47.)

The ALJ further determined that Plaintiff's mild hypertensive retinopathy did not constitute a

severe impairment because it was diagnosed well past the date last insured.  (R. at 847.)

At step three of the sequential process, the ALJ concluded that Plaintiff did not have an

impairment or combination of impairments that met or medically equaled one of the listed

impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (*Id.*)  At step four, the ALJ

assessed Plaintiff's RFC as follows:

> Through the date last insured, [Plaintiff] had the residual functional capacity to
> perform a range of sedentary work as defined in 20 C.F.R 404.1567(a), consistent
> with an ability to lift and/or carry ten pounds frequently and 15 pounds occasionally,
> stand and/or walk 30 minutes at a time and four hours total in a workday, sit for one
> hour at a time and six hours total in a workday, and occasionally stoop, kneel,
> crouch, crawl and climb stairs.  He could work in environments without workplace
> hazards, such as unprotected heights or hazardous machinery.  He could perform
> simple, routine tasks with no strict production quotas.

(R. at 849-50.)  In reaching this determination, the ALJ accorded Dr. Manos' opinion "some

weight," explaining that he found Plaintiff was slightly more limited.  (R. at 852.)  He further

explained that the opinion of Medical Expert Dr. Kendrick, which was slightly more restrictive,

was entitled to greater weight.

The ALJ "accepted and adopted" Dr. Kendrick's opinion.  (R. at 853.)  In support of his

adoption of Dr. Kendrick's opinion, the ALJ reasoned as follows:

> Dr. Kendrick is Board Certified in orthopedic surgery and is well qualified by reason
> of training and experience in reviewing an objective record and formulating an
> opinion as to medical severity.  Dr. Kendrick had access to the entire record and had
> the opportunity to observe [Plaintiff] throughout the course of the proceedings.  Dr.
> Kendrick's analysis is consistent with and supported by objective clinical, diagnostic,

12

and laboratory findings found in the record as well as the credible portion of [Plaintiff's] testimony. Dr. Kendrick's assessment as to medical severity is therefore more probative and reliable than the slightly less restrictive assessment of Dr. Manos, who is a DDD reviewing source who did not have an opportunity to observe [Plaintiff's] testimony or review the complete record. Furthermore, as an expert witness before the Social Security Administration (SSA), Dr. Kendrick has knowledge of the SSA program and had access to all of the medical evidence on record when he offered his opinion. Dr. Kendrick's opinion is also based on a greater longitudinal perspective of [Plaintiff's] condition.

(R. at 852-53 (internal citation to the record omitted).)

The ALJ assigned "some limited weight" to the opinions physical therapist Tracy Hiltz rendered in her December 2009 work performance evaluation. (R. at 853.) The ALJ explained that Ms. Hiltz's limitation of Plaintiff to sedentary work was "substantially consistent" with the RFC he assessed. (*Id*.) He noted, however, that Ms. Hiltz's opinion was cut short due to Plaintiff's hypertension. He pointed out that Ms. Hiltz is not an "acceptable source of medical evidence [as] defined in the regulations" and that "the record does not elsewhere document that [Plaintiff's] hypertension is uncontrollable with medication and treatment compliance, or would prevent sustained sedentary work." (*Id*.)

The ALJ assigned "little weight" to the assessments of Dr. Soldano, finding them inconsistent with the other opinions of record. (*Id*.) The ALJ also noted that the 2014 opinion was well past Plaintiff's date last insured and inconsistent with his 2009 opinions that Plaintiff's condition was stable and that he did not have a problem engaging in physical activities.

Finally, the ALJ found Plaintiff's allegations of limitations to be not fully credible. (R. at 850-51, 854-55.) The ALJ explained that a careful review of the record does not document sufficient objective medical evidence to substantiate the severity of the pain and degree of functional limitations alleged by Plaintiff.

13

Relying on the VE's testimony, the ALJ determined that through his date last insured, even though Plaintiff is unable to perform his past relevant work, other jobs exist in the national economy that Plaintiff can perform. (R. at 865-57.) He therefore concluded that Plaintiff was not disabled under the Social Security Act. (R. at 857.)

## V.  STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision

14

of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## VI.    ANALYSIS

In her Statement of Errors, Plaintiff advances two contentions of error.  Plaintiff first challenges the weight the ALJ assigned to the opinion of physical therapist Ms. Hiltz.  Plaintiff also maintains that the ALJ failed to adequately address the issue of Plaintiff's pain in his decision.  The Court considers these contentions of error in turn.

## A.    ALJ's Consideration of Ms. Hiltz's Opinion

According to Plaintiff, the ALJ should have accorded Ms. Hiltz's opinion more weight and more thoroughly discussed her observations and findings regarding Plaintiff's gait, fatigue, and sustainability.  (R. at 13.)  The Commissioner counters that substantial evidence supports the ALJ's RFC assessment and that he reasonably evaluated Ms. Hiltz's opinion.  The Court agrees with the Commissioner.

The ALJ must consider all medical opinions that he or she receives in evaluating a claimant's case.  20 C.F.R. § 416.927(c).  The applicable regulations define medical opinions as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions."  20 C.F.R. § 416.927(a)(2).

Physical therapists like Ms. Hiltz, however, are not "acceptable medical sources" and instead fall into the category of "other sources." 20 C.F.R. §§ 404.1513(d), 416.913(d). Although the ALJ must consider opinions from "other sources" and "generally should explain the weight given," . . . "other-source opinions are not entitled to any special deference." *Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 550 (6th Cir. 2014) (citation omitted). Social Security Ruling 06-03p, upon which Plaintiff relies, states as follows:

> Since there is a requirement to consider all relevant evidence in an individual's case record, the case record should reflect the consideration of opinions from medical sources who are not "acceptable medical sources" and from "non-medical sources" who have seen the claimant in their professional capacity. Although there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision, the adjudicator generally should explain the weight given to opinions from these "other sources," or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case.

SSR 06-3p, 2006 WL 2329939, at *6.

Here, the ALJ considered Ms. Hiltz's opinion, accorded it "some limited weight," and explained that her limitation of Plaintiff to sedentary work was "substantially consistent" with the assessed RFC. (R. at 853.) He also acknowledged that Ms. Hiltz was not an "acceptable source of medical evidence [as] defined in the regulations," pointed out that she cut the evaluation short due to Plaintiff's hypertension, and concluded that "the record does not elsewhere document that [Plaintiff's] hypertension is uncontrollable with medication and treatment compliance, or would prevent sustained sedentary work." (*Id.*) The ALJ also accepted and adopted the opinion of Dr. Kendrick, who had explicitly discussed his consideration of Ms. Hiltz's opinion and evaluation results during his testimony at the administrative hearing. (R. at 852-53, 892.)

16

The Court finds that the ALJ did not err in his consideration and weighing of Ms. Hiltz's opinions. To begin, the ALJ was correct to evaluate Ms. Hiltz's opinion as an "other source" opinion, rather than as an "acceptable source" opinion. 20 C.F.R. §§ 404.1513(d), 416.913(d). In addition, the ALJ made clear the weight he assigned and the reasons for that weight. Further, Plaintiff fails to identify record evidence contradicting the ALJ's conclusion that the record does not support additional limitation attributable to hypertension. The ALJ also reasonably relied upon Dr. Kendrick's consideration and interpretation of Ms. Hiltz's observations and opinion. Significantly, Plaintiff does not challenge the ALJ's consideration and weighing of Dr. Kendrick's opinion.

In sum, because the ALJ did not err in his consideration and weighing of Ms. Hiltz's opinion, Plaintiff's first contention of error is **OVERRULED**.

## B.    Plaintiff's Credibility

In his second contention of error, Plaintiff challenges the ALJ's consideration of his allegations of pain. The Court finds this contention of error to likewise be without merit.

The Sixth Circuit has provided the following guidance in considering an ALJ's credibility assessment:

> Where the symptoms and not the underlying condition form the basis of the disability claim, a two-part analysis is used in evaluating complaints of disabling pain. 20 C.F.R. § 416.929(a); *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001); *Felisky v. Bowen*, 35 F.3d 1027, 1038-39 (6th Cir. 1994). First, the ALJ will ask whether the there is an underlying medically determinable physical impairment that could reasonably be expected to produce the claimant's symptoms. 20 C.F.R. § 416.929(a). Second, if the ALJ finds that such an impairment exists, then he must evaluate the intensity, persistence, and limiting effects of the symptoms on the individual's ability to do basic work activities. *Id.*

*Rogers*, 486 F.3d at 247.

17

"The ALJ's assessment of credibility is entitled to great weight and deference, since he [or she] had the opportunity to observe the witness's demeanor." *Infantado v. Astrue*, 263 F. App'x 469, 475 (6th Cir. 2008) (citing *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997)); *Sullenger v. Comm'r of Soc. Sec.*, 255 F. App'x 988, 995 (6th Cir. 2007) (declining to disturb the ALJ's credibility determination, stating that: "[w]e will not try the case anew, resolve conflicts in the evidence, or decide questions of credibility" (citation omitted)).  This deference extends to an ALJ's credibility determinations "with respect to [a claimant's] subjective complaints of pain." *Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 652 (6th Cir. 2009) (quoting *Siterlet v. Sec'y of Health & Hum. Servs.*, 823 F.2d 918, 920 (6th Cir.1987)).  Despite this deference, "an ALJ's assessment of a claimant's credibility must be supported by substantial evidence." *Walters*, 127 F.3d at 531.  Furthermore, the ALJ's decision on credibility must be "based on a consideration of the entire record." *Rogers*, 486 F.3d at 247 (internal quotation omitted).  An ALJ's explanation of his or her credibility decision "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Id.* at 248; *see also Mason v. Comm'r of Soc. Sec. Admin.*, No. 1:06–CV–1566, 2012 WL 669930, at *10 (N.D. Ohio Feb. 29, 2012) ("While the ALJ's credibility findings 'must be sufficiently specific', *Rogers*, 486 F.3d at 248, the intent behind this standard is to ensure meaningful appellate review.").

"Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence." *Walters*, 127 F.3d at 531.  In addition, the Regulations list a variety of factors an ALJ must consider in evaluating the severity of symptoms, including a claimant's daily activities; the effectiveness of

medication; and treatment other than medication.  20 C.F.R. § 404.1529(c)(3); SSR 96–7p, 1996 WL 374186 (July 2, 1996)[4]; *but see Ewing v. Astrue*, No. 1:10–cv–1792, 2011 WL 3843692, at *9 (N.D. Ohio Aug. 12, 2011) (suggesting that although an ALJ is required to consider such factors, he or she is not required to discuss every factor within the written decision) (Report and Recommendation later adopted).  The Sixth Circuit has held that "even if an ALJ's adverse credibility determination is based partially on invalid reasons, harmless error analysis applies to the determination, and the ALJ's decision will be upheld as long as substantial evidence remains to support it."  *Johnson v. Comm'r of Soc. Sec.*, 535 F. App'x 498, 507 (6th Cir. 2013) (citing *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012)).

As set forth above, the ALJ found Plaintiff's allegations to be not fully credible based upon his conclusion that the record does not document sufficient objective medical evidence to substantiate the severity of the pain and degree of functional limitations he alleges.  (R. at 850-51, 854-55.)  In addition to discussing and relying upon the objective evidence and the opinions of Drs. Kendrick and Manos to reach this conclusion, the ALJ points out that Dr. Massau also opined that Plaintiff's alleged pain was excessive in view of the objective testing results.  (R. at 854-55.)  The ALJ also points out that Plaintiff reported actively looking for a job in 2009.  In

---

[4]SSR 16-3p, which became effective March 28, 2016, superceded and rescinded SSR 96-7p.  *See* SSR 16-3p, 2016 WL 1119029, at *1.  Because SSR 16-3p does not include explicit language to the contrary, it is not to be applied retroactively.  *See Bowen v. Georgetown Univ. Hosp.,* 488 U.S. 204, 208 (1988) ("Retroactivity is not favored in the law.  Thus congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result."); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006) ("The Act does not generally give the SSA the power to promulgate retroactive regulations.");  *Cruse v. Comm'r of Soc. Sec*., 502 F.3d 532, 541–42 (6th Cir. 2007) (declining to retroactively apply a newly effective Social Security Ruling in the absence of language reflecting the Administration's intent to apply it retroactively).

addition, the ALJ considered Plaintiff's activities of daily living, finding them "not inconsistent" with an ability to perform the range of work assessed in the RFC. (R. at 855.) The ALJ further noted that Plaintiff has required only conservative treatment and that he has not always been compliant with treatment. The ALJ explained that in March 2009, Plaintiff reported that he did not take his medications as prescribed and that he continued to smoke cigarettes through at least his date last insured despite his allegations of breathing difficulties. Finally, the ALJ noted the absence of any persistent side effects attributable to Plaintiff's medications.

The Court finds that the ALJ's detailed discussion of reasons for his credibility assessment amply supplies substantial evidence supporting his credibility finding. Contrary to Plaintiff's assertion, the foregoing discussion reflects that the ALJ properly considered the requisite factors in assessing credibility. For example, the ALJ properly relied upon the record evidence, including objective medical findings. *See* 20 C.F.R. § 404.1529(c)(2) (objective medical findings are useful in assessing the intensity and persistence of a claimant's symptoms). As the ALJ pointed out, Dr. Massau also concluded that the objective testing results did not support Plaintiff's alleged pain, describing it as excessive. (R. at 559.) Dr. Manos similarly concluded that Plaintiff's allegations "appear disproportional in severity to the objective medical findings." (R. at 680.) In addition, it was reasonable for the ALJ to consider that Plaintiff required and received only conservative treatment, that the record did not reflect alleged side effects attributable to his medications, and that at times, he had not been compliant with treatment recommendations. *See* SSR 96–7p, 1996 WL 374186 (July 2, 1996) (in assessing credibility, the adjudicator must consider, among other factors, "[t]he type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate

pain or other symptoms" and "[t]reatment, other than medication, the individual receives or has received"); 20 C.F.R. § 404.1529(c)(3) (same); *Lester v. Soc. Sec. Admin.*, 596 F. App'x 387, 389 (6th Cir. 2015) (concluding that ALJ reasonably discounted a doctor's opined limitations where, among other things, the claimant was receiving conservative treatment); *Sias v. Sec'y of Health & Hum. Servs*., 861 F.2d 475, 480 (6th Cir. 1988) (discounting the claimant's allegations where he failed to follow prescribed treatment). The ALJ also reasonably discounted Plaintiff's allegations based upon the record evidence reflecting his activities of daily living, his observations of him at the hearing, and conflicts between his testimony and other record evidence. *See* 20 C.F.R. § 404.1529(c)(3)(i) (daily activities may be useful to assess nature and severity of claimant's symptoms); *Warner v. Comm'r of Soc. Sec*., 375 F.3d 387, 392 (6th Cir. 2004) ("The administrative law judge justifiably considered [the claimant's] ability to conduct daily life activities in the face of his claim of disabling pain."); *Walters*, 127 F.3d at 532 ("An ALJ may also consider household and social activities engaged in by the claimant in evaluating a claimant's assertions of pain or ailments."); *Id*. at 531 (discounting credibility appropriate where contradiction between testimony and other evidence); *Infantado*, 263 F. App'x at 475 (great weight accorded ALJ's assessment because he had opportunity to observe witness's demeanor). Finally, as the Commissioner points out, the ALJ relied upon and adopted Dr. Kendrick's opinion, who had explicitly testified that he evaluated Plaintiff's allegations of pain in arriving at the opined RFC. (R. at 894, 852-53.)

In sum, the Court finds that the ALJ's assessment of Plaintiff's credibility was based on consideration of the entire record and is supported by substantial evidence. Accordingly, applying the applicable deferential standard of review, the Court concludes that the ALJ's

21

credibility determination was not erroneous.  Plaintiff's second contention of error is therefore

**OVERRULED.**

## VII.    DISPOSITION

In sum, from a review of the record as a whole, the Court concludes that substantial

evidence supports the ALJ's decision denying benefits.  Accordingly, Plaintiff's Statement of

Errors is **OVERRULED**, and the Commissioner of Social Security's decision is **AFFIRMED**.

**IT IS SO ORDERED.**

Date: March 14, 2017                                                     _____ /s/ *Elizabeth A. Preston Deavers* _____
                                                                                         ELIZABETH A. PRESTON DEAVERS
                                                                                         UNITED STATES MAGISTRATE JUDGE